IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERMAIN D. SANDERS,

        Plaintiff,

v.                                                                                  Case No. 11-4179-JTM

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS

        Defendant.

MEMORANDUM AND ORDER

The following matter comes to the court on defendant Eric Shinseki's Motion to Dismiss (Dkt. 11). Shinseki argues that plaintiff Sanders's Complaint must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. Pro 12(b)(1) and failure to state a claim under Fed. R. Civ. Pro 12(b)(6). After considering the arguments made by both parties, the court grants Shinseki's Motion to Dismiss.

**I. Background**

Sharmain Sanders was employed by the Veteran's Association ("VA") as a Contract Representative for the Health Revenue Center in the VA Medical Center in Topeka, Kansas. As a Contract Representative, Sanders worked at a desk answering telephone calls from veterans and using a computer to access information about eligibility and benefits.

On January 28, 2008, the VA reprimanded Sanders for disrespectful conduct, failure to follow instructions, and obscene and threatening language toward a supervisor. This reprimand arose from an incident that occurred on September 25, 2007.

On March 21, 2008, Sanders made an Equal Employment Opportunity complaint to the VA's Office of Resolution Management. On April 1, 2008, the VA gave Sanders notice of a proposed ten-day suspension. Sanders met with Mr. Isaacks, her supervisor, to discuss the suspension. Isaacks was aware of Sanders's EEO complaint. On May 13, 2008, the plaintiff entered into a settlement agreement with the VA, wherein she accepted a written reprimand and waived all appeal rights regarding the January 28 written reprimand and the April 1 proposed suspension. In return, the VA cleared Sanders's Official Personnel Folder of any previous disciplinary actions.

Sanders claims she began experiencing symptoms of irritable bowel syndrome and nonspecific colitis in August of 2007. On July 21, 2008, as is required by the Health Revenue Center's personal electronics policy, Sanders requested managerial permission to use a personal heating pad at work for the treatment of her symptoms of colitis and irritable bowel syndrome. The next day, Issacks denied Sanders's request. On July 31, Isaacks issued a three-day suspension to Sanders, to be served from August 10 through August 12, because Sanders had rendered herself unavailable to take calls from veterans. In response to the suspension, Sanders filed a formal administrative complaint on November 4, 2008, claiming that the denial of her request to use a heating pad at work constituted employment discrimination.

On September 16, 2008, Sanders provided a medical recommendation from her doctor that she be allowed to use a heating pad to accommodate her condition. As a result of the recommendation, Sanders's request was granted November 4, as an exception to the workplace rule concerning personal electronics. Sanders claims that the

initial denial of permission for her heating pad forced her to request unpaid leave under the Family Medical Leave Act ("FMLA"). Sanders claims she was approved for leave from September 3 until November 17, but the defendant disputes this. While on leave, Sanders was contacted at home about a shift schedule change, and she received a different schedule than the one she was familiar with. Despite being scheduled to work, Sanders did not report to work on November 13. On December 31, 2008, Issacks issued a fourteen-day suspension to Sanders, to be served from January 6 until January 19, 2009. Sanders resigned from the VA on April 12, 2009.

The Office of Resolution Management ("ORM") for the VA investigated Sanders's initial employment discrimination complaint and also considered whether Sanders's fourteen-day suspension was motivated by either disability or retaliation discrimination. On November 3, 2009, at the conclusion of the investigation, the ORM provided Sanders with a copy of the report of investigation and notice of her right to request a hearing before an EEOC Administrative Judge. When Sanders did not request a hearing within the time frame provided in 29 C.F.R. § 1614.108(f), the ORM issued a decision finding that Sanders did not prove she was an individual with a disability entitled to coverage under the Rehabilitation Act. The ORM also found that the VA offered legitimate and non-discriminatory reasons for the manner in which it processed the request for a heating pad and for the fourteen-day suspension. The ORM noted that Sanders had worked there for three years and should have been familiar with and followed the procedures for obtaining leave from work. The ORM concluded that Sanders failed to prove the VA discriminated against her.

On December 10, 2009, pursuant to C.F.R. § 1614.604(b), Sanders filed an appeal from the ORM's final decision concerning her equal employment opportunity complaint alleging employment discrimination in violation of the Rehabilitation Act of 1973. After reviewing the facts of Sanders's complaint and the ORM's ruling, the EEOC and the Office of Federal Operations affirmed the ORM's decision, finding no evidence of discrimination.

On December 2, 2011, Sanders filed suit against Eric K. Shinseki, Secretary of Veterans Affairs, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § *701 et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the FMLA, 29 U.S.C. §2611.

**II. Legal Standard**

*A. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Federal courts have limited jurisdiction and may exercise their power only when specifically authorized to do so. *Castanedo v. Immigration Naturalization Serv.*, 23 F.3d 1576, 1580 (10th Cir. 1994). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal based upon a court's lack of subject matter jurisdiction. When analyzing a Rule 12(b)(1) motion to dismiss, the court presumes it lacks subject matter jurisdiction until the plaintiff can prove otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited

4

jurisdiction, [ ] and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

*B. Motion to Dismiss for Failure to State a Claim*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming *Twombly*'s probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223–24. The court must assume that all allegations in the complaint are true. *Twombly*, 550 U.S. at 589. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' " *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2, (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

5

**III. Analysis**

*A. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

    1. Count I

Count I of Sanders's Complaint is a disability discrimination claim based on Section 504 of the Rehabilitation Act (codified as 29 U.S.C. § 794). This law prohibits federal agencies from discriminating against a qualified individual with a disability. Sanders seeks only monetary damages under this section. Shinseki argues correctly that the court has no jurisdiction over this claim, because the federal government has not waived its sovereign immunity for monetary damages in Section 504 claims against federal agencies.

The U.S. Supreme Court addressed this issue in *Lane v. Pena*, 518 U.S. 187 (1996). At the outset, the Court stated that the question presented in the case was "whether Congress has waived the Federal Government's sovereign immunity against awards of monetary damages for violations of [Section 504 of the Rehabilitation Act]." *Lane*, 518 U.S. at 189. After analyzing the remedies available for violations of Section 504, the Court concluded that although the government has waived its sovereign immunity against monetary damages under Section 501, it did not waive it under Section 504. *Id.* at 192–94. The Court upheld the lower courts' rulings granting the injunctive relief sought by the plaintiff but denying compensatory damages under Section 504.

Sanders's only argument against the Court's ruling in *Lane* is that the U.S. Court of Appeals for the Tenth Circuit has recognized that claims under Sections 501 and 504 are related by their similar elements. In *Woodman v. Runyan*, 132 F.3d 1330 (10th Cir.

6

1997), the court explored the interrelationship between these claims. Section 504 prohibits discrimination against a qualified individual with a disability by any "program or activity receiving Federal financial assistance or [by] any program or activity conducted by an Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Section 501, which applies only to federal agencies, requires those agencies to submit an affirmative action program plan "for the hiring, placement, and advancement of individuals with disabilities in such . . . agency." § 791(b). As the court in *Woodman* explained, rather than simply meeting the standard of equal treatment set out in Section 504, federal employers have "an affirmative duty to meet the needs of disabled workers and to broaden their employment opportunities" under Section 501. *Woodman*, 132 F.3d at 1337–38.

The court in *Woodman*, however, said nothing about the different remedies that are available under the similar sections. The ruling in no way overturned *Lane*. Thus, this court must follow U.S. Supreme Court precedent in holding that Congress did not waive the federal government's sovereign immunity for monetary damages in Section 504 claims against federal agencies. Sanders does not ask for injunctive relief under Section 504; she only asks for monetary damages. With sovereign immunity not waived, this court does not have jurisdiction over Claim I of Sanders's Complaint.

### 2. Count IV

In Count IV of her Complaint, Sanders alleges that her employer interfered with her rights under the FMLA, 29 U.S.C. § 2611 *et seq*. Shinseki argues that this court has no

subject matter jurisdiction over this claim because of sovereign immunity. The court agrees with Shinseki and dismisses Count IV of Sanders's Complaint.

Enacted in 1993, the FMLA was designed to allow employees to take periods of leave from their jobs for various health and family related reasons. As enacted, the FMLA contains two Titles: Title I, codified at 29 U.S.C. §§ 2601-2916 and Title II, codified at 5 U.S.C. §§ 6381-6387. Title I governs leave for private employees and federal employees not covered by Title II. It provides for up to twelve weeks per year of unpaid leave for workers who give adequate notice and obtain medical certification of the need to take time off for a qualifying personal or family medical condition. *See* 29 U.S.C. § 2612. Title II of the FMLA guarantees the same substantive rights given private and Title I federal employees to qualifying federal civil service employees.

Under Title II, "the term 'employee' means any individual who (A) is an 'employee' as defined by section 6301(2) . . . and (B) has completed at least 12 months of service as an employee . . ." 5 U.S.C. § 6381(1)(A). Section 6301(2) of the United States Code refers to 5 U.S.C. § 2105 for the definition of an "employee." Section 2105 defines an "employee" as generally anyone appointed to a federal service position who is performing a federal function and is supervised by another appointed employee or other persons identified in that statute.

A Title II employee is any federal civil service employee who has worked more than twelve months in civil service, is not a postal employee, and does not meet the narrow exceptions identified in 5 U.S.C. § 2105(a). Most individuals employed by the federal government are covered under Title II. For instance, in the following cases, each

of the employees were found to be covered by Title II of the FMLA: *Russell v. United States Dep't of Army*, 191 F.3d 1016 (9th Cir. 1999) (Army Corps of Engineers employee); *Mann v. Haigh*, 120 F.3d 34 (4th Cir. 1997) (non-appropriated fund employee); *New-Howard v. Shinseki*, 2012 WL 2362546, n. 4, (E.D. Pa., June 21, 2012) (Plaintiff, an employee of the Department of Veterans Affairs, is a Title II employee and as such may not maintain a cause of action under the FMLA); *Keen v. Brown*, 958 F. Supp. 70 (D. Conn. 1997) (Department of Veterans Affairs laundry service worker); *Sutherland v. Bowles*, 1995 WL 367937 (E.D. Mich. 1995) (United States Small Business Administration employee under a temporary appointment for a period exceeding one year).

Although Title I and Title II employees under the FMLA are afforded equivalent rights to leave time, Title I contains two sections that have no counterpart in Title II. Section 105 of Title I prohibits an employer from interfering with or denying the exercise of an employee's rights under the FMLA. 29 U.S.C. § 2615. Section 107 of Title I provides that employers who violate section 105 will be liable to aggrieved employees for monetary damages and equitable relief. To that end, Section 107 authorizes the Secretary of Labor or the aggrieved employee to bring a civil action against an employer in federal or state court. 9 U.S.C. § 2617(a)(2). Title II of the FMLA contains no provisions analogous to sections 105 and 107 of Title I.

The Fourth and Ninth Circuits have considered whether Title II of the FMLA provides federal employees with a private right of action, as is provided under Title I. *See Russell*, 191 F.3d 1016; *Mann*, 120 F.3d 34. Both circuits have held that it does not. Similarly, the three district courts that have considered the issue have also held that

9

Title II employees do not have a private right of action. *See New-Howard*, 2012 WL 2362546; *Keen*, 958 F. Supp. 70; *Sutherland*, 1995 WL 367937.

These courts based their analyses on sovereign immunity. In observing that Title II of the FMLA contains no provisions for a private cause of action such as those in Title I, the courts have uniformly held that Congress did not intend to waive the government's sovereign immunity. The *Keen* court reviewed the House Report proceedings concerning Title II and found that the Report also indicated that Congress did not intend to give federal employees a judicial remedy. 958 F. Supp. at 74. The Report states that, "[t]he Committee believes that the provision of Title II affecting Federal employees can be adequately enforced using existing grievance procedures established by a collective-bargaining agreement or by agency management." H.R. Rep. No. 103-8(II), at 24 (1993).

Accordingly, this court holds that Title II of the FMLA creates neither an express nor an implied right of action whereby federal employees may obtain judicial review of adverse FMLA decisions. Thus, Count IV in Sanders's Complaint must be dismissed for lack of subject matter jurisdiction.

*B. Motion to Dismiss for Failure to State a Claim*

At the outset, the court notes that a federal employee must exhaust all available administrative remedies before filing an employment discrimination complaint in the district court. *See Brown v. General Services Administration*, 425 U.S. 820, 832 (1976). In this case, the Office of Resolution Management accepted for investigation the issue of whether the denial of Plaintiff's July 21, 2008 request to use a heating pad was

10

motivated by disability or retaliation discrimination or both. The ORM later agreed to investigate whether Sanders's fourteen-day suspension from January 6, 2009 — January 19, 2009, was motivated by disability or retaliation discrimination or both. These are the only claims that were exhausted through the administrative process, so they are the only issues the court may consider. *See Brown*, 425 U.S. at 832.

      1. Claim II

In Claim II of Sanders's Complaint, she claims that her employer violated Section 501 of the Rehabilitation Act (29 U.S.C. § 791). The four elements of a prima facie claim are (1) that the plaintiff is disabled under the Act; (2) that she would be "otherwise qualified" to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency); and (4) that the program has discriminated against the plaintiff. *McGeshick v. Prinicipi*, 357 F.3d 1146, 1150 (10th Cir. 2004). This court holds that Sanders did not plead sufficient facts to make out a plausible discrimination claim.

Sanders claims that her employer's failure to timely grant her request to use a heating pad at work caused her to take unpaid leave due to her colitis and irritable bowel syndrome. Even presuming she can show the first three elements of her claim, Sanders does not allege facts that would plausibly show any intentional discrimination because of her disability. Her Complaint establishes that the Health Revenue Center had an objectively neutral policy regarding personal electronic devices in the workplace. Sanders does not deny that the policy was the VA's basis for denying her heating pad request. Although she claims the policy was "out-dated" and "had not

11

been uniformly enforced," these are conclusory statements. As a result, the court cannot accept them as true without any facts alleged in support.

The VA denied Sanders's first request for accommodation because she did not follow the Health Revenue Center's policy. This policy requires the requestor "to provide detailed medical documentation from an appropriate professional, such as a doctor, social worker, or rehabilitation counselor" to support her request for accommodation. As a result of Sanders's failure to provide medical documentation, her supervisor denied her July 21 request the next day. Sanders then took leave starting on September 3. She alleges that this leave is the damage that was forced upon her by the VA's denial of her request. However, Sanders later provided the Health Revenue Center with medical documentation for her heat pad request: a doctor's note dated September 9, 2008. Thus, Sanders did not provide the VA with sufficient medical documentation of her disability until after the alleged injury—her leave that started on September 3—had already occurred. She acquired proper documentation only after taking her leave. Further, in November 2008, as a result of Sanders's medical documentation, the VA granted her request. This timeline establishes that Sanders's claim of discrimination is not plausible because her failure to provide proper documentation of her disability was the true reason for the VA's denial of her accommodation request. Accordingly, the court dismisses Claim II for failure to state a claim.

2. Claim III

Claim III of Sanders's Complaint is a retaliation claim. Sanders alleges that her employer violated Title VII by retaliating against her for engaging in protected activities. Sanders alleges that she challenged as racially-motivated a reprimand proposed January 28, 2008, and a ten-day suspension proposed in April 2008. Sanders alleges that because of this challenge, her supervisor (1) denied her request to use a heating pad at work and (2) suspended her on December 31, 2008, for fourteen days for being absent without leave. These were the only two claims from Count III in Sanders's Complaint that the EEOC investigated and over which the court has jurisdiction.

A prima facie case of retaliation under Title VII requires a plaintiff to show that (1) she engaged in "protected opposition to discrimination," (2) she suffered an "adverse employment action," and (3) the adverse decision was motivated by the protected activity such that there was a causal connection between the two. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000). An adverse employment action is one that is "materially adverse" to the employee's job status. *Sanchez v. Denver Publ. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998). An action that is "a mere inconvenience or an alteration of job responsibilities" is not materially adverse to employment status. *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000). To constitute an adverse employment action, the employer's conduct must result in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004).

13

Sanders, therefore, has the burden of pleading enough facts to establish a plausible claim that either the denial of her heating pad request or the fourteen-day suspension were "a significant change in employment status." She does not meet this burden. First, Sanders fails to show that the denial of her request to use a heating pad was a significant change. The VA permitted her to use the heating pad once she brought medical documentation of her condition, as discussed above.

Second, Sanders does not show that the fourteen-day suspension was an adverse employment action resulting in a significant change in her employment status. A suspension may constitute an adverse action, but only if it materially affects the individual's employment status. Here, Sanders does not claim that she actually served the suspension. Even if she did, Sanders does not allege that it resulted in any change in her job, pay or benefits.

Additionally, Sanders must show a causal connection between the protected activity and the alleged retaliation. *See Kendrick*, 220 F.3d at 1234. A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). But unless a very close temporal proximity exists between the protected activity and the alleged retaliation, the plaintiff must offer additional evidence to establish causation. *See Conner v. Schnuck Mkts. Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). The Tenth Circuit has held that a one and one-half month period between the protected activity and the adverse action may, by itself,

14

establish causation, but a three-month period is insufficient to establish causation by itself. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

In this case, the length of time between the protected activity and the alleged retaliatory actions is too long to sustain a retaliation claim without more evidence. Sanders claims she filed an EEO complaint with the ORM asserting racial discrimination on March 21, 2008. The denial of Sanders's accommodation request occurred on July 22, 2008, four months later. The VA issued its fourteen-day suspension of Sanders on December 31, 2008, more than nine months after she participated in the protected activity. These alleged adverse employment actions took place long enough after Sanders's protected activity that they are insufficient to establish causation. Sanders does not allege any other causal links in her Complaint. Accordingly, the court holds that Sanders has not plead sufficient facts to state a plausible retaliation. The court dismisses Claim III.

**IV. Conclusion**

In summary, the court has no jurisdiction over claims I and IV because the federal government has not waived sovereign immunity. Additionally, the court holds that Sanders did not plead sufficient factual allegations to establish claims II and III. The court dismisses Sanders's Complaint.

IT IS THEREFORE ORDERED this 29th day of November, 2012, that Shinseki's Motion to Dismiss (Dkt. 11) is granted, and all of Sanders's claims are dismissed.

                                                       s/J. Thomas Marten
                                                      J. THOMAS MARTEN, JUDGE